IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAFETY SOCKET LLC, a Delaware limited liability company, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 18-CV-06670 |
| v. | ) ) | Hon. Mary M. Rowland |
| RELLI TECHNOLOGY, INC., a New York corporation, | ) ) ) | Mag. Heather K. McShain |
| *Defendant.* | ) ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
RELLI TECHNOLOGY, INC.'S MOTION TO COMPEL**

Plaintiff, Safety Socket LLC ("Plaintiff" or "Safety Socket"), by its undersigned counsel of record, submits the following as its Response in Opposition to Relli Technology, Inc.'s ("Defendant" or "Relli") Motion to Compel ("Motion" or "Mot.").

**INTRODUCTION**

Even in its extremely limited disclosures to date, Relli has provided complete confirmation of multiple acts of infringement, beyond those alleged in the Complaint, but with the same modus operandi. Lacking any defense for its dangerous infringement scheme, Relli uses its Motion to distract and obstruct. With no factual underpinning, Relli is attempting to use the discovery process to make this case about something hypothetically amiss in Safety Socket's 90-year history as a trademark owner. Safety Socket has nonetheless fully responded to Relli's demands by producing an extensive array of trademark-related documents and inviting Relli to inspect legions more. Rather than take Safety Socket up on its offer, or take any action in the U.S. Patent and Trademark Office ("PTO") to challenge the validity of Safety Socket's trademarks, Relli has opted instead to complain in endless correspondence and make its diversionary Motion to the Court. Safety Socket is confident that it has disclosed and/or made available for inspection more than ample evidence

of the validity of its trademarks at issue in this case. It therefore reiterates its demand that Relli withdraw its sham affirmative defense questioning the validity of its marks or face sanctions for a successful motion dismissing same.

Relli also complains that Safety Socket has not delivered sufficient proof of Relli's misdeeds and argues that it is "not required to prove Safety Socket's case." Mot. at 6. But Relli *is* required to turn over documents that would prove Safety Socket's case which, by all indications, Relli has in its possession. Where else would Relli obtain the information included in its summary of infringing sales of Safety Socket's trademarked commercial fasteners?[1] As detailed in Safety Socket's Motion to Compel, Relli has withheld or destroyed (apparently post-litigation) what should be hundreds of relevant documents and/or digital files relating to Relli's own summary of infringing sales alone. Relli's contention that Safety Socket should be in possession of records relating to Relli's transactions, which exclusively involve parties other than Safety Socket, is absurd, but par for the course in its groundless Motion.

Relli's Motion is shot through with exactly such inaccurate and makeweight contentions,[2] attempting to deflect from its own indefensible failures to disclose damning information that necessarily is (or was) in its possession. In fact, several of Relli's contentions in the Motion are so inapt that they appear to have been recycled from a motion in a different case.

---

[1] *See* Safety Socket's Motion to Compel, Erbs Declaration, Ex. A (RELLI_000293 is a summary of 6 infringing sales by Relli of Safety Socket's altered, commercial fasteners).

[2] For example, Relli claims that the gravamen of this case is that "as a result of the after-market plating applied to the screws, they *no longer* met the [sic] certain military specifications." Mot. at 2 (emphasis supplied). After two years of pleadings, motions, disclosures and correspondence consistently reiterating that Relli's scheme starts with its purchase of commercial fasteners (which have never met military specifications), from Safety Socket's exclusively commercial distributor, and then passing them off as military-grade, it is hard to believe Relli's counsel was unaware of this misstatement.

I. **DESPITE THE ABSENCE OF ANY BONA FIDE CHALLENGE FROM RELLI, SAFETY SOCKET HAS PRODUCED OVER A THOUSAND PAGES OF DOCUMENTS SUPPORTING THE VALIDITY OF ITS TRADEMARKS.**

As Relli points out, in mid-January of 2020, it began demanding that Safety Socket produce documents proving the validity and continuous use of Safety Socket's trademarks. In the case of the federally-registered Banded Knurl Mark,[3] Relli demands proof of such use (and of the dates thereof), going back 6 decades, to 1960, notwithstanding the presumption of validity that the federal registration affords. Mot. at 2, 8-9. This clearly is an undue burden, given the irrelevance of decades-old usage to a mark registered in 2016, and the absence of any factual justification, claim of abandonment or other bona fide challenge to the mark (in this Court or in the PTO), to justify it.[4]

Relli claims that "Safety Socket has not produced documents demonstrating continuous and exclusive use of its marks." Mot. at 9. However, Safety Socket first responded to Relli's request for trademark-related documents nearly 10 months ago, by e-mail dated January 29, 2020, attaching documents supporting its federal registration, and asking Relli's counsel for any factual or legal basis to rebut the presumption of validity of its federally-registered Banded Knurl Mark. Shebar Opp. Dec., ¶2, Ex A.[5] Safety Socket also pointed out that Relli admitted in its Answer that it is "without knowledge or information sufficient to form a belief" as to Safety Socket's

---

[3]This mark, forged into each of Safety Socket's commercial fasteners, has been the primary subject of infringement in this case since its inception two years ago, as has been described repeatedly and in detail in pleadings, motions, declarations, trademark notices under the local rules and hundreds of pages of disclosures. See Point II, *infra*.

[4]Two years into this case, Relli suggests for the first time, without any basis, that the PTO examiner may have been "misled" and that the mark is too utilitarian to acquire a federal registration. Mot. at 10. The PTO would have been the ideal place to test those theories during the past two years. Safety Socket is not obligated to negate, in discovery, every hypothetical posited by Relli with regard to Safety Socket's trademarks.

[5]The Opposition Declaration of Steven M. Shebar ("Shebar Opp. Dec.") is filed simultaneously herewith.

allegations of ownership, and exclusive and continuous use of its marks, thereby admitting that its affirmative defense attacking the marks is based on nothing. *Id.* In the end, Safety Socket agreed, in the interest of "putting this matter to rest without expending significantly more time and attorneys' fees," to provide further trademark-related documentation reasonable available to it, which Safety Socket in fact did.

Because companies don't generally organize their files around proving trademark usage, over the ensuing months, Safety Socket expended significant time collecting more than 1,000 pages of documents evidencing chain of title, use in commerce, advertising and other information bearing on Safety Socket's ownership of the trademarks at issue in this case. Relli's counsel then demanded Bates numbers to help them identify those documents once produced. In response, by letter to Relli's counsel dated September 10, 2020 (Shebar Opp. Dec., Ex. B), Safety Socket gave specific Bates numbers of responsive, trademark-related documents:

> (ii) SSLLC_1000001-851 are documents that demonstrate Safety Socket's trademarks in use in commerce. . . [and]
> (iii) SSLLC_1000852-867 and SSLLC_10001490-1600 are Safety Socket's trademark registration and PTO filings[.]

Apparently over and above this evidence of the marks' validity, Relli wants proof specifically of "exclusive use" of the marks. Other than (i) the PTO's conclusion that the Banded-Knurl Mark warranted a federal registration, (ii) the absence of any infringement litigation, or even claims of infringement, concerning any of Safety Socket's marks (registered or common law), (iii) the Affidavit of Safety Socket's CEO, James Erbs, filed in the PTO attesting to the facts supporting the registration and (iv) the sworn Declaration of Mr. Erbs in this case, attesting to Safety Socket's use and ownership of its marks, it is not clear what "evidence" of a non-event (*i.e.,* that no other party anywhere in the country is using Safety Socket's trademarks) Relli believes Safety Socket should have.

4

Further wasting the parties' and the Court's time, Relli makes a string of grossly misleading statements about Safety Socket's production to date:

> Safety Socket agreed to produce photographs of many of the items listed as available for inspection in response to Request Nos. 1 and 4, including images of the dies used to imprint the Banded Knurl Mark, images of Safety Socket uniforms, packaging for Safety Socket products utilizing the Banded Knurl Mark, and representative copies of invoices showing use since 1960. (See Ex. F at 1.) Safety Socket has not provided the requested invoices or any other evidence demonstrating use in commerce of its marks.

Mot. at 9. But as Relli well knows, Safety Socket *did* produce photographs of its machine dies, Safety Socket uniforms and packaging. Shebar Dec., Ex. C (SSLLC_2000001-02). As for "invoices showing use since 1960," Relli acknowledges elsewhere in its Motion that Safety Socket has invited Relli to come to its headquarters to inspect its millions of pages of invoices.[6] In addition, Safety Socket *has* produced "other evidence demonstrating use in commerce of its marks," including Safety Socket's trademarked certifications, one of which Relli included in its *own* production (*id.*, Ex. C, (RELLI_000049)) and dozens of others included with Safety Socket's production. *Id.*, Ex. C (*e.g.*, SSLLC_100609-650).[7]

Accordingly, the Court should curtail Relli's efforts to misdirect time and resources in this manner, and require Relli to focus instead on what appears to be serious non-compliance with discovery rules and federal laws regarding document and evidence retention. If Relli truly has a basis to believe there is a defect in Safety Socket's trademark ownership in this case, its experienced trademark counsel would have commenced proceedings in the PTO seeking to cancel

---

[6] Although its only obligation is to permit inspection of documents as they are kept in the ordinary course of its business, Safety Socket has already endeavored to sort sales records to assist Relli in isolating the sales of millions of fasteners bearing the Banded Knurl Mark. Shebar Opp. Dec., Ex. C (SSLLC_200046).

[7] The trademarked Safety Socket certifications in this set (which is one of several sets of certifications produced to Relli) appear every fourth or fifth page, *i.e.*, SSLLC_1000609, 614, 618, 622, 626, etc.

the registered mark during the two years this case has been pending. It knows, however, that any such action would be frivolous and sanctionable, and its time and money-wasting discovery tactics are no less so.

## II. SAFETY SOCKET HAS REPEATEDLY AND THOROUGHLLY DESCRIBED RELLI'S INFRINGING CONDUCT IN THIS CASE, AND HAS FULLY DISCLOSED EXISTING EVIDENCE THEREOF.

Relli's argument that Safety Socket has failed to disclose or even adequately describe the manner in which Relli's actions infringe its marks is replete with demonstrable falsehoods and feigned confusion. Here is a partial list:

(A) Relli's Motion at page 4:

> [B]ecause Safety Socket failed to comply with Rule 34(b)(2)(C)'s requirement that it state whether it is withholding documents based on its many objections to the document requests, Relli does not know whether Safety Socket has no responsive documents or is wrongfully withholding responsive documents.

On the *very next page*, Relli cites Safety Socket's repeated response to Relli's document requests: "Safety Socket responded that it has produced all responsive documents in its possession." Mot. at 5. Only one can be true, and Safety Socket can verify that it is Relli's latter statement. Shebar Opp. Dec., Ex. D (Safety Socket's Responses to Relli's First Set of Requests for Production, making clear in great detail, that all responsive documents are being produced or, where too voluminous, available for inspection).

(B) Relli's Motion at page 6:

> Safety Socket failed to provide any evidence that Relli used the Banded Knurl Mark in an infringing manner.

As Safety Socket spelled out at length in its Motion to Compel, its commercial distributor, Kanebridge, in response to a subpoena, has documented *millions* of units of Safety Socket's commercial fasteners bearing the Banded Knurl Mark sold to Relli (who, by its own description, is a *military* supplier). Relli has also produced documents comprising circumstantial proof of 3

6

instances of infringement, which, pieced together by Safety Socket, show purchase orders to Relli from government contractor, General Dynamics Land Systems ("GDLS"), corresponding purchases by Relli of fasteners bearing the Banded Knurl Mark from Kanebridge, and corresponding plating orders from Relli to its outside platers. Finally, Relli's own summary table (RELLI_000293)[8] acknowledges Relli's alteration (by plating) and sale of fasteners bearing the Banded Knurl Mark to specific customers on 6 occasions. This is the evidence of "Relli's use of the Banded Knurl Mark in an infringing manner" that Safety Socket has been able to acquire from Relli to date, though Safety Socket strongly suspects Relli has access to a great deal more.

(C) <u>Relli's Motion at page 6:</u>

> Safety Socket has not even sufficiently explained what it is digging for.

Safety Socket's First Set of Requests for Production of Documents spells out in great detail, precisely what Safety Socket is seeking in discovery.[9] If that were not sufficient, Safety Socket's counsel's August 2, 2020 letter, sent for the purpose of avoiding the instant motion practice, states, among other things:

> The primary object of SSLLC's discovery in this matter is to determine (i) how much of SSLLC's commercial product Relli has purchased, (ii) whether and how Relli processed that product and (iii) how Relli ultimately disposed of it. SSLLC's First Set of Document Requests and Interrogatories encompassed all of these categories of information, among others.
> \* \* \* \*
> Second, the Schedule identifies 7 instances of post-processing of SSLLC's fasteners: Customer P.O. numbers 51949, 218123, 218593, 703667, 222588, 223108 and 357116. These are relatively recent orders, occurring in 2013, 2015, 2016 and 2018. Nonetheless, Relli has not produced any documentation relating to the purchase, processing or sales of these fasteners. Please provide all of the documents identified in Requests 1, 2 and 3 regarding these fasteners.

---

[8] Declaration of James Erbs, filed with Safety Socket's Motion to Compel, Ex. A.
[9] A copy of Safety Socket's document requests is attached to the Shebar Declaration filed with Safety Socket's Motion to Compel ("Shebar Mot. Dec."), as Exhibit A.

> \* \* \* \*
>
> Finally, we call your attention to RELLI_000278-279. These are, respectively, the packing list and certificate of conformance for Relli's shipment of 8 SSLLC commercial fasteners in May of 2018 ("Instance 3") Relli has not produced these documents, or the information contained in them, with respect to either Instance 1 or Instance 2. To the extent Relli claims it no longer has these documents, we call your attention to RELLI_000010 and 12. These are computer-generated summaries of the order and shipping information for the January 8, 2010 sale identified in the Complaint. It thus appears that Relli has the capability of regenerating these documents from its internal data. What we would like are the actual packing lists, certificates of conformance and invoices to GDLS for Instances 1 and 2 (as well as all of the other sales of SSLLC commercial product based on the Kanebridge file and/or the Schedule). Given Relli's ability to regenerate this data, however, we request, in the alternative, documents that Relli acknowledges are accurate depictions of the packing, certificate of conformance and invoice information for Instances 1 and 2 (as well as all of the other sales of SSLLC commercial product based on the Kanebridge file and/or the Schedule). We would also like a confirmation from Relli that: (i) the packing list and certificate of conformance for Instances 1 and 2 are or were substantially similar in form and data items as RELLI_000278-279 and (ii) confirmation that the invoices for Instances 1, 2 and 3 have been paid by GDLS.

Shebar Mot. Dec., Ex. B. Yet, Relli's counsel tells the Court it does not understand what Safety Socket is "digging for."

(D) <u>Relli's Motion at page 6:</u>

> Safety Socket has not produced its manufacturer's certification, nor has Safety Socket produced anything demonstrating such a use of the manufacturer's certification is a trademark use or improper.

As discussed in Point I (text at footnote 7), above, Safety Socket has, in fact, produced many pages of examples of its manufacturer's certification, reflecting actual uses in commerce of both SAFETY SOCKET as a word mark and SAFETY SOCKET and Design. Shebar Opp. Dec., Ex. C (*e.g.*, SSLLC_100609-650). In fact, Relli has also produced Safety Socket's manufacturer's certification from its own files. *Id.* (RELLI_000049).

8

As Relli correctly notes in its Motion, Safety Socket's response to Relli's Interrogatory Number 5 describes Relli's admitted *trademark* use in commerce of Safety Socket's certifications when filling orders for its customers like GDLS. Mot. at 6. In that response, Safety Socket points out that per Relli's Motion to Dismiss ("MTD"), Relli admittedly includes Safety Socket's certifications (which it calls "certificates of conformance") when shipping Safety Socket's commercial fasteners to its customers. Relli tries to back away from this admission by claiming that it was merely re-stating Safety Socket's allegations, because they had to be taken as true on a motion to dismiss. Mot. at 6-7. However, Relli plainly goes well beyond any allegations made by Safety Socket when it states:

> Indeed, Safety Socket cannot make such an allegation because ***it knows that Relli's customers (like GDLS) require copies of all the certificates of conformance to verify that the screws comply with the requirements specified by the customer. In other words, Relli's customers verify the "pedigree" of the products they acquire from Relli and the certificates of conformance provide such "pedigree."*** Therefore, the factual allegations against Relli do not amount to any violation of law.

Relli MTD at 5 (Doc. # 21) (emphasis supplied). Perhaps unintentionally, Relli thereby admitted that its purposes in including Safety Socket's certifications are (i) to "prove" (falsely) to its customers (like GDLS) that the fasteners were manufactured by Safety Socket which, once plated, they were not and (ii) to "prove" (falsely) to its customers (like GDLS) that Safety Socket's commercial fasteners comply with military requirements specified by the customer which, as commercial fasteners, they do not.

Alerted to the damning nature of these admissions, Relli has not disclosed a single complete set of shipping documents (*i.e.,* including the Safety Socket certifications) for any of its sales of Safety Socket's commercial fasteners, which is the *sole* reason Safety Socket does not have that documentary proof in its possession.

9

(E) Relli's Motion at page 7:

> Safety Socket has not produced any documents clearly showing what the "SAFETY SOCKET and Design" is, let alone Relli's use of it.

Relli's asserted ignorance of the SAFETY SOCKET and Design mark is hard to fathom in light of its repeated viewing opportunities during two years of litigation, even without the extensive documentation of its use produced in discovery. *See*, *e.g.*, TM Notice pursuant to Local Rule 3.2 (Doc. #5); PTO Notification of TM Claims (Doc. #6); RELLI_000049 (Shebar Opp. Dec., Ex. C); SSLLC_100854-862 (*id.*, Ex. C).

Safety Socket has already explained at length exactly how Relli's uses of Safety Socket's manufacturer's certifications constitute trademark infringement in two different respects - falsely certifying Safety Socket as the source of the fasteners and falsely representing those fasteners as satisfying the military specifications required by Relli's customers (like GDLS). See Point II(D), above. Again, Relli's contentions do not remotely resemble the realities of this case.

(F) Relli's Motion at page 7:

> Relli no longer even knows for certain what the Banded Knurl Mark is.

Once again, Relli's claimed ignorance, this time of the Banded Knurl Mark, is hard to fathom in light of Relli's repeated exposure to it during the two years of this litigation -- again, even without the extensive samples of use produced in discovery. TM Notice pursuant to Local Rule 3.2 (ECF Doc. #5); PTO Notification of TM Claims (ECF Doc. #6); SSLLC_1001490-1600 (PTO registration file with drawing of Banded Knurl Mark) (Shebar Opp. Dec., Ex. C).

Despite its receipt of descriptions and hundreds of actual images of the Banded Knurl Mark in discovery, Relli tells the Court it is confused between the "double-diagonal knurl" mark (which is, and always has been, a description of Safety Socket's Banded Knurl Mark) and the "single-diagonal knurl" mark, which is, and always has been, a part of Safety Socket's military "SAF"

mark, used exclusively on Safety Socket's military fasteners. As set forth in the Complaint (and as Safety Socket has repeatedly informed Relli's counsel), the SAF mark is not the subject of any infringement claim in this case. It is mentioned in the Complaint because, as a mark included in the U.S. Military Handbook for recognized fastener manufacturers, it is indicative of Safety Socket's reputation among military consumers, like Relli's customers. This provides an incentive for Relli to misrepresent the fasteners it sells as Safety Socket fasteners. Relli has long been aware of these facts, from Safety Socket's Motion for a Preliminary Injunction (Doc. #10) and its Opposition to Relli's Motion to Dismiss (Doc. #31), in addition to communications between the parties' counsels about the SAF mark.

As Relli acknowledges in its Motion, it was Relli who nonetheless demanded evidence relating to the trademark and sales of goods bearing Safety Socket's military, single-diagonal, SAF mark. In response, Safety Socket produced such documents. The two marks are clearly distinguishable, since only the military mark has the large letters "SAF" forged into it, together with a single (rather than a double) set of diagonal lines. Shebar Opp. Dec., Ex. C (*compare* SSLLC_1000265 (double-diagonal) *with* SSLLC_1000324 (single-diagonal SAF). Relli now tells the Court it is so confused by the existence of these two different marks that it is actually "hinder[ing] Relli's ability to prepare a defense." Mot. at 7. In a word, nonsense.

(G) Relli's Motion at page 8:

> In sum, Safety Socket has alleged Relli misused three marks in connection with specific sales identified in its complaint. It appears from Safety Socket's discovery responses that it has *no such evidence.*

As just described in detail at Point II (B), (C) and (D), above, Safety Socket has in fact disclosed documentary evidence, coupled with Relli's own admissions, of numerous instances where Relli has infringed Safety Socket's trademarks. Additionally, Relli is aware of Safety Socket's evidence of infringement because it was neatly identified, by Bates number, in counsel's

September 10, 2020 letter. Shebar Opp. Dec., Ex. B. The only limitation on Safety Socket's ability to acquire further evidence of Relli's infringements (which undoubtedly exists) is Relli's refusal to make disclosures.

### III. SAFETY SOCKET'S ATTORNEY'S FILES CONCERNING A DIFFERENT CASE ARE SUBJECT TO BOTH ATTORNEY-CLIENT PRIVILEGE AND THE ATTORNEY WORK PRODUCT DOCTRINE.

Relli seeks "correspondence between parties and their attorneys, pleadings, exhibits, certifications and sales records of all parties[,]"[10] relating to another trademark infringement case brought by Safety Socket, 15-cv-02437 (N.D. IL.), *Safety Socket LLC v. Accurate Aerospace, Inc.* Relli agrees that it will obtain any filed documents on its own and that privileged materials are, of course, excluded. However, the files in the *Accurate* case are also subject to the work product doctrine.

In *Webster Bank, N.A. v. Pierce & Assocs., P.C.*, No. 16 C 2522, 2018 WL 704693, at *9 (N.D. Ill. Feb. 5, 2018), the court found that attorney work product protection applies even though the work product was generated in a prior litigation, citing numerous authorities:

> *See Grolier*, 462 U.S. at 25 ("[T]he literal language of the Rule protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation.") (emphasis in original); *Hobley*, 433 F.3d at 949 (work product protection "endures after termination of the proceedings for which the documents were created, especially if the old and new matters are related"); *see, e.g., Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 182 (N.D. Ill. 2006) (concluding that the work product doctrine is best served by extending it to subsequent litigation); *Endeavor Energy Res., L.P. v. Gatto & Reitz, LLC*, 2017 WL 1190499, at *11 (W.D. Pa. Mar. 31, 2017) ("[E]ven if documents were prepared for a different case, work-product protection may apply as long as the cases 'are closely related in parties or subject matter.'") (quoting *Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 309 (D.N.J. 2008)).

---

[10]Safety Socket does not understand what is meant by "exhibits," and, as to "sales records of all parties," does not understand how these could possibly be relevant, even if they were in Safety Socket's possession.

*Id.* In addition, "[p]rotection under the work product doctrine is not automatically waived by disclosure to third parties." *Indus. Hard Chrome, Ltd. v. Hetran, Inc.,* No. 99C1716, 1999 WL 968424, at *1 (N.D. Ill. Oct. 18, 1999), citing *In re Quantum Chem./Lummus Crest*, No. 90 C 778, 1992 WL 71782, at *4 (N.D.Ill. Apr. 1, 1992). "Work product information can be disclosed to third parties so long as the information is maintained in secrecy against the opponent." *Bramlette v. Hyundai Motor Co.*, No. 91 C 3635, 1997 WL 338980, at *3 (N.D.Ill. Sept. 1, 1993).

Accordingly, to the extent the Court finds any of the categories of documents Relli seeks from the Accurate litigation to be sufficiently relevant to the instant case to be discoverable, Safety Socket intends to avail itself of the work product protection.

### IV. SAFETY SOCKET HAS PRODUCED OR INVITED RELLI TO INSPECT ALL DOCUMENTS IT HAS RELATING TO UP-CERTING AND DAMAGES.

Relli claims Safety Socket "has produced no documents showing that the actual screws Relli sold to its customer failed to meet that customers specifications." Mot. at 14. This is yet another false contention. In its September 10, 2020 letter to Relli's counsel, in addition to identifying several other categories of documents that relate to Relli's up-certing of Safety Socket's commercial fasteners to purported military-grade fasteners, Safety Socket explained that:

> (i) SSLLC_1001141-1165 is a Safety Socket presentation which details the process of up-certing and the potential hazards caused by Relli and others who engage in this conduct.
> \* \* \* \*
> (iv) SSLLC_000001-149 and SSLLC_1001363-1489 relate to the specifications and standards that govern parts that Relli sells to its military and aerospace customers. Because the plating of commercial-grade parts does not satisfy or comply with these specifications and standards, these documents are relevant to Relli's up-certing.
> (v) SSLLC_1001603-1664 are e-mails to and from Relli concerning one or more instances of Relli's up-certing.

13

Finally, and again falsely, Relli tells the Court, "Relli has not found any documents relating to Safety Socket's alleged damages." This is particularly shocking in light of the help Safety Socket rendered to Relli in finding these documents in the September 10 letter:

> SSLLC_000150-246 and SSLLC_1000873-1074 reflect Safety Socket's sales of military/aerospace-grade products to Relli and GDLS. The decrease in sales to both entities correlates inversely to Relli's purchases of commercial-grade products. This represents losses to Safety Socket caused by Relli's up-certing.
> SSLLC_1001601-1602 reflect a calculation of the financial impact of lost sales of military/aerospace-grade product due to Relli's up-certing.

Shebar Opp. Dec., Ex. B.

As should be apparent by now, most of the claims Relli makes in its Motion are demonstrably false. Nonetheless, Relli has forced Safety Socket and its counsel to spend an enormous amount of time (i) demonstrating Relli's failures to disclose and/or maintain key litigation documents and (ii) responding to a multitude of patently false and irrelevant claims relating to Safety Socket's supposed failures to disclose information. If allowed to continue, Relli obviously intends to make the litigation more costly and distract from its own serious liability issues and its now-apparent document retention violations. Safety Socket respectfully asks the Court to admonish Relli's counsel to put an end to these tactics and immediately begin taking its own document production obligations in this case seriously.

[conclusion and signature block on next page]

## **CONCLUSION**

For all of the foregoing reasons, Safety Socket respectfully requests that the Court enter an order (i) denying Relli's Motion to Compel in its entirety; (ii) granting Safety Socket's Motion to Compel in its entirety; and (iii) granting such other and further relief as the Court deems proper.

    Respectfully submitted,

/s/Steven M. Shebar
SHEBAR LAW FIRM
0N370 Fanchon St.
Wheaton, Illinois 60187
(630) 877-6833
steveshebar@shebarlaw.com

*Attorneys for Plaintiff Safety Socket LLC*