## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SAFETY SOCKET LLC,

Plaintiff,

v.

RELLI TECHNOLOGY, INC.,

Defendant.

Case No. 18-cv-6670

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Safety Socket LLC, a manufacturer of commercial and military-compliant fasteners, alleges that Defendant Relli Technology, Inc. infringed its trademarks by purchasing Safety Socket's trademarked, commercial-grade fasteners, altering them and selling them to Relli's customers as compliant with military specifications. Safety Socket brings claims of trademark infringement and counterfeiting, as well as state-law claims for unfair competition and deceptive trade practices. Relli counters that it is not infringing and instead is properly supplying the fasteners to meet its customers' specifications. Before the Court are cross motions for summary judgment. For the reasons stated below, Relli's summary judgment motion [182] is granted in part and denied in part and Safety Socket's summary judgment motion [187] is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

1

law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

On cross motions for summary judgment, the Court draws all reasonable inferences in favor of "the party against whom the motion at issue was made." *Woodring v. Jackson Cty. Ind.*, 986 F.3d 979, 984 (7th Cir. 2021) (quotations and

internal citation omitted). *See also First State Bank of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 567 (7th Cir. 2009) (on cross-motions for summary judgment the court "construe[s] all facts and inferences therefrom in favor of the party against whom the motion under consideration is made.") (internal quotation marks omitted).

## BACKGROUND[1]

Plaintiff Safety Socket is in the business of manufacturing commercial, aerospace and military-grade fasteners for its U.S. government, U.S. military, aerospace and commercial customers. Safety Socket's fasteners are used in, among other things, propellers, nuclear reactors, military battle tanks, naval guns, heavy earth-moving equipment, roller coasters and recreational vehicles, which are sold and utilized throughout the world. PSOF ¶ 1. Defendant Relli is a supplier of military/defense and aerospace parts, including fasteners, to its U.S. military and U.S. Department of Defense contractor customers, such as General Dynamics Land Systems ("General Dynamics") and BAE Systems. *Id.* ¶ 2. Relli sells new military spare parts to domestic and overseas customers. DSOF ¶ 1. Relli states on its website that it is certified in "QSLD [Qualified Supplied List Distributor] Class 2 and Class 3 Threaded Fasteners." Safety Socket holds the analogous certification, QSLM (Quality Supplier List -- Manufacturer), as a manufacturer and supplier of fasteners. PSOF ¶ 3.[2]

---

[1] The facts in this background section are taken from the parties' Rule 56.1 statements and are undisputed unless otherwise noted.

[2] In its Rule 56.1 response, Relli does not dispute it "transacted business with two Illinois companies" but denies that venue is proper or that the Court has personal jurisdiction over it. (Dkt. 193). Relli does not challenge personal jurisdiction or venue in its summary judgment briefs, did not file a motion challenging personal jurisdiction or venue, and does not otherwise

Shlomo Jacob is Relli's owner, Hyung Seok (a/k/a "Stone") Park is Relli's Chief Operating Officer and VP of International Sales, and James Erbs is Safety Socket's President and CEO. PSOF ¶ 34; PSOAF ¶¶ 13, 28. Safety Socket manufactures both military-compliant fasteners and customer-specific commercial fasteners, which it sells directly to its customers, and off-the-shelf commercial fasteners. PSOF ¶ 6. The off-the-shelf commercial fasteners are sold through Safety Socket's commercial distributor, Kanebridge Corporation ("Kanebridge"). *Id.*

In connection with its sale of commercial fasteners Safety Socket owns and uses the following trademarks: (1) a "three-dimensional configuration of a double diagonal knurl on socket head cap screws" (the "Banded Knurl Mark"); (2) the typeset letters BD (the "BD Mark") in connection with socket head screws; (3) the name and standard character word mark SAFETY SOCKET; and (4) stylized words SAFETY SOCKET and design logo. *Id.* ¶¶ 7, 10, 12, 14. (In this opinion the Banded Knurl Mark and BD Marks are the "Head Marks" and the Safety Socket Word Mark and Safety Socket and Design Mark are the "Word Marks").

Safety Socket never sells its commercial fasteners as parts that meet military specifications. PSOAF ¶ 8. The two types of fasteners are materially different in the areas of fitness for specific purposes, corrosion resistance, fabrication methods and

---

develop this argument. The Court need not consider the issue further as a party waives an argument when it fails to "present that specific argument . . . even though the issue may have been before the district court in more general terms." *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 688 (7th Cir. 2022). *See also Hedeen Int'l, LLC v. Zing Toys, Inc.*, 811 F.3d 904, 906 (7th Cir. 2016) (a personal jurisdiction defense may be waived); *Ellenbecker v. Jimmy John's, LLC*, 2021 WL 5206211, at *1 (7th Cir. Nov. 9, 2021) ("Venue is largely a matter of litigational convenience; accordingly it is waived if not timely raised.") (quotation omitted).

pre-sale testing requirements, among others. *Id*. ¶ 2. Commercial fasteners are often stocked by commercial distributors such as Kanebridge, making them more readily available for quicker acquisition than military fasteners. *Id*. ¶ 40. Safety Socket's manufacturer's certificates include the Safety Socket Word Mark and the Safety Socket and Design Mark ("Safety Socket Certifications"). PSOF ¶ 31.

In this case, Safety Socket's claims against Relli are: trademark infringement under federal law (Count I), unfair competition and false designation of origin (Count II), counterfeiting (Count III), and Illinois state-law claims of trademark infringement (Count IV), unfair competition (Count V) and deceptive trade practices (Count VI). (Dkt. 171 "Am. Compl."). The Court begins with Relli's laches argument and then proceeds to the merits of the claims.

## ANALYSIS

### I.  Laches

Relli argues that laches is a "complete defense" to Safety Socket's claims because Safety Socket should have filed suit in 2011. (Dkt. 183 at 14). The doctrine of laches "is derived from the maxim that those who sleep on their rights, lose them." *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792 (7th Cir. 2002). For laches to apply in a trademark infringement case, a defendant must show: "(1) the plaintiff had knowledge of the defendant's use of an allegedly infringing mark; (2) the plaintiff inexcusably delayed taking action with respect to the defendant's use; and (3) the defendant would be prejudiced by allowing the plaintiff to assert its rights." *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 459 F. Supp. 3d 1058, 1080 (N.D. Ill. 2020)

5

(citation omitted). The party asserting this affirmative defense has the burden of proof. *Dore & Assocs. Contracting, Inc. v. Int'l Union of Operating Engineers, Loc. Union No. 150*, No. 15 C 6221, 2017 WL 3581159, at *11 (N.D. Ill. Aug. 18, 2017) (citing *Bauer v. J.B. Hunt Trans., Inc.*, 150 F.3d 759, 763 (7th Cir. 1998)). And the court "enjoys considerable discretion in determining whether to apply the doctrine of laches to claims pending before it." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999).

According to Relli, laches should bar Safety Socket's claims because "Safety Socket admitted that it knew Relli was engaging in the allegedly infringing conduct at least by August 2011, seven years before Safety Socket filed suit." (Dkt. 183 at 15). This is not accurate. The evidence Relli relies on shows that Safety Socket was aware in August 2011 of a *single* part—a screw sold to General Dynamics that would not gauge properly. (Erbs Dep. (Dkt. 184-3), pp. 139–41). Mr. Erbs, Safety Socket's owner, answered the question at his deposition as follows:

> Q: In August of 2011, Safety Socket knew that Relli purchased the part, had it plated, and then sold it to General Dynamics, right?
> A: Correct.
> Q: And you knew in 2011 -- August of 2011 that you considered that to be inappropriate, right?
> A: Yes.

*Id.* p. 141. Mr. Erbs did not testify that he knew Relli was engaged in infringing conduct; instead he believed in August 2011 that Relli's conduct as to *one part* was inappropriate. This is not enough for laches to apply. "Logic dictates that 'unreasonable delay' does not include any time before the owner is able to pursue a claim for infringement— otherwise, a trademark owner could be punished for not

bringing a claim that he had no right to bring." *Univ. Healthsystem Consortium v. UnitedHealth Grp., Inc.*, 68 F. Supp. 3d 917, 927 (N.D. Ill. 2014) (quotation omitted). As explained in the leading treatise, McCarthy on Trademarks and Unfair Competition:

> Laches is not measured from defendant's first unpermitted use of the contested mark. Laches is measured from the date when there was an *infringing use sufficient to require legal protest and possible lawsuit*. In most cases, this requires legal action only when defendant's infringing acts significantly impact on plaintiff's good will and business reputation. A small level of sales of unauthorized goods will often not be sufficient to require prompt action.

6 McCarthy on Trademarks and Unfair Competition § 31:19 (5th ed.) (emphasis added). The sale of one part in August 2011 is not even a "small level of sales of unauthorized goods." *Id*. Safety Socket responds that it had limited information in 2011, and it was not until April 2018, when Relli asked Safety Socket to certify a plated commercial part to a military specification, that Safety Socket understood the scope of Relli's actions. (Dkt. 200 at 7–8). Relli does not cite any other evidence demonstrating that in 2011, Safety Socket had evidence of "infringing use sufficient to require. . . possible lawsuit." McCarthy § 31:19. Therefore Relli's contention that Safety Socket unreasonably delayed in bringing suit is not persuasive.

As to the prejudice element, Relli maintains that it only needs "minimal evidence of prejudice" because of Safety Socket's seven-year delay. (Dkt. 183 at 15). However the Court has found that Relli has not shown unreasonable delay. Relli generally claims prejudice because it "relied on its ability to process and resell fasteners, including Safety Socket fasteners, and has developed strong relationships with its

customers in doing so." (Dkt. 183 at 16; DSOF ¶ 22). Relli does not, however, provide any detail about the number of customers or quantity or value of sales impacted by the claimed prejudice. Nor does Relli specify how circumstances would have been different had Safety Socket filed suit in 2011. *See Chattanoga Mfg.*, 301 F.3d at 795 (defendant must show it "changed [its] position in a way that would not have occurred if the plaintiff had not delayed."); *Coilcraft, Inc. v. Inductor Warehouse, Inc.*, No. 98 C 0140, 2007 WL 2071991, at *10 (N.D. Ill. July 18, 2007) ("the prejudice must be 'substantial,' 'material' or 'serious'"), report and recommendation adopted sub nom., 2007 WL 2728754 (N.D. Ill. Sept. 13, 2007).[3]

In sum, Relli has not met its burden of proof as to its affirmative defense of laches, and the Court denies Relli's summary judgment motion on that ground.

## II.    Trademark Infringement Claims (Counts I, II and IV)

Turning to the claims, Safety Socket alleges that Relli uses Safety Socket Marks (both the Word and Head Marks) in an unauthorized manner constituting trademark infringement. According to Safety Socket, Relli is "up-certing", or passing off Safety Socket's commercial fasteners as military parts, thereby violating Safety Socket's rights under the Lanham Act. [188 at 13; 200 at 8].

The Lanham Act "established a federal right of action for trademark infringement to protect both consumer confidence in the quality and source of goods and businesses'

---

[3] Relli relies on *Smith v. Caterpillar, Inc.*, 338 F.3d 730 (7th Cir. 2003) but that was an employment discrimination case, not a trademark infringement case. And in *Ameripay LLC v. Ameripay Payroll, Ltd.*, No. 04 C 5253, 2005 WL 2293676 (N.D. Ill. Sept. 16, 2005), cited by Relli, plaintiff sent a cease-and-desist letter in 1998 but waited 5 years, until 2003, to file suit. *Id.* at *3. Those cases are not persuasive.

goodwill in their products." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 672 (7th Cir. 2001) (citation omitted). To prevail on a trademark infringement claim, a plaintiff must establish that: (1) its mark is protectable; and (2) the defendant's use of the mark is likely to cause confusion among consumers or deceive the public. *See id.* at 673 (citations omitted); *Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 857 (N.D. Ill. 2018) (both federal claims of trademark infringement and unfair competition and false designation of origin require this showing), aff'd, 926 F.3d 409 (7th Cir. 2019); *Eagle F. v. Phyllis Schlafly's Am. Eagles*, 451 F. Supp. 3d 910, 919 (S.D. Ill. 2020) (the elements of a claim for Illinois common law trademark infringement are the same as under the Lanham Act).

Relli does not dispute that the Safety Socket Marks are protectable, so the first element is satisfied. Nevertheless Relli raises several challenges to Safety Socket's infringement claims. The Court first addresses Safety Socket's Word Marks and then the Head Marks.

**A. Safety Socket Word Marks**

Relli argues that it has not infringed Safety Socket Word Marks as a matter of law because Relli has not used them "in commerce". [183 at 7]. Relli maintains that whether Safety Socket Certifications are shipped with the products or not, the marks are not "used in commerce." *Id.* at 8. Safety Socket contends that the "use in commerce" requirement is met because its certifications, bearing its trademarks, are provided by Relli in its shipment of fasteners.

9

The Court finds Relli interprets "use in commerce" too narrowly. This term is defined to include a mark "placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale." 15 U.S.C. § 1127. In 2019, the Federal Circuit held that the statute's definition of "use in commerce" "does not apply to trademark infringement." *VersaTop Support Sys., LLC v. Georgia Expo, Inc.*, 921 F.3d 1364, 1370 (Fed. Cir. 2019). The court relied on, for example, the treatise McCarthy on Trademarks and Unfair Competition, which explains that the term in § 1127 was "drafted to define the types of 'use' that are needed to qualify a mark for federal registration" and "was never intended to limit the scope of 'uses' that would constitute infringement." 4 McCarthy § 23:11.50.[4]

The Court need not discuss this issue further, however, because it agrees with Relli that Safety Socket failed to explain how Relli's use of the Word Marks is likely to cause confusion, a required element of Safety Socket's claim. *See CAE, Inc.*, 267 F.3d at 673; *Uncommon*, 305 F. Supp. 3d at 858 (explaining that a plaintiff "must

---

[4] Relli takes issue with Safety Socket's reliance on a Federal Circuit case. But other courts including in this district have acknowledged that "use in commerce" is not so narrow. *See e.g. Lettuce Entertain You Enterprises, Inc. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777, 784 (N.D. Ill. 2010) ("The commercial use of a mark is not limited to cases where it was attached to a product that was actually sold."); *Taubman Co. v. Webfeats*, 319 F.3d 770, 775 (6th Cir. 2003) (liability based on "extremely minimal" commercial activity). Moreover, although not binding, the Seventh Circuit has cautioned courts to "think carefully before disagreeing with the views of the Federal Circuit, a specialist court on questions concerning intellectual property." *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1428 (7th Cir. 1985).

show a likelihood of consumer confusion caused by [d]efendant's use of [the trademark] to prevail"). Safety Socket thus waived any argument on this issue.

Relli's motion argued that Safety Socket was required to show that Relli's use of the marks was likely to cause confusion, but in fact Relli used the Word Marks in a way "not likely to deceive the public." [183 at 7, 9]. According to Relli, there was "no possibility of confusion" with respect to the Word Marks because Relli "uses the marks only to fairly identify the properties of fasteners when they left Safety Socket's control." *Id*. Safety Socket failed to respond to the argument that it cannot establish confusion as to the Word Marks. [200 at 8–12].[5]

"It is a well-established rule that arguments not raised to the district court are waived on appeal." *MBM Holdings LLC v. City of Glendale*, 843 F. App'x 5, 8 (7th Cir. 2021) (cleaned up). A party waives an argument when it fails to "present that specific argument . . . even though the issue may have been before the district court in more general terms." *Cooper*, 42 F.4th at 688; *see also Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1040 (7th Cir. 2021) ("In considering a motion for summary judgment, the court is not obligated to assume the truth of a nonmovant's conclusory allegations on faith or to scour the record to unearth material factual disputes.") (cleaned up); *Karriem v. Gen. Servs. Admin.*, No. 17 C 2572, 2018 WL 6179089, at *3

---

[5] The Court understands Safety Socket's argument elsewhere in the briefing that Relli's sending Safety Socket Certifications with the shipment of the fasteners adds to confusion about the fasteners' Head Marks. But Safety Socket does not argue that Relli's use of the Word Marks caused consumer confusion about those marks. Safety Socket's summary judgment motion [188] similarly focuses on the Head Marks.

(N.D. Ill. Nov. 27, 2018) (explaining that the non-moving party waives arguments that were not raised in its response to the moving party's summary judgment motion).

In sum, as to the Safety Socket Word Marks, Relli's motion for summary judgment is granted and Safety Socket's motion is denied. The Court turns next to the Safety Socket Head Marks.

**B. Safety Socket Head Marks**

Relli does not dispute that it sold to its customers Safety Socket fasteners bearing the Safety Socket Head Marks. [183 at 3]. While Relli argues that it has not infringed these marks, Safety Socket asserts that Relli's sale of "Safety Socket's trademarked commercial fasteners misrepresented as specific, higher-quality, more expensive military fasteners, are sales of counterfeit military fasteners bearing Safety Socket's trademarks." [200 at 13].

### *1. First Sale Doctrine*

Relli says its sale of unaltered Safety Socket products is protected by the "first sale" doctrine because Safety Socket's rights to control the sale of these products expire after the first authorized sale. [183 at 10]. Safety Socket responds that this doctrine does not apply to a party reselling a trademarked good in a way that misrepresents its nature and is not authorized by the trademark owner. [200 at 12–13].

The first sale doctrine limits a producer's right to control distribution of its product—"[g]enerally trademark law does not apply to the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner." *PW*

12

*Stoelting, L.L.C. v. Levine*, No. 16-C-381, 2018 WL 6603874, at *9 (E.D. Wis. Dec. 17, 2018) (cleaned up). The first sale doctrine is an affirmative defense, so Relli has the burden to show it applies. *Maui Jim*, 459 F. Supp. 3d at 1081; *see also Maya Swimwear, Corp. v. Maya Swimwear, LLC*, 789 F. Supp. 2d 506, 514 (D. Del. 2011) (first sale doctrine is an affirmative defense); *Steeplechase Arts & Prods., L.L.C. v. Wisdom Paths, Inc.*, 2023 WL 416080, at *8 (D.N.J. Jan. 26, 2023) (same). To meet its burden, Relli must present "evidence sufficient to withstand summary judgment." *Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003).[6]

A key to the first sale doctrine is that the products are "genuine goods." *See Steeplechase Arts & Prods.*, 2023 WL 416080, at *8; *Maui Jim, Inc.*, 459 F. Supp. 3d at 1081 ("Trademarked goods are not considered genuine goods until the trademark owner first authorizes the sale of those goods."). Relli does not dispute that Safety Socket never sells its commercial fasteners as parts that meet military specifications. PSOAF ¶ 8. Relli concedes it sometimes sells unaltered (commercial) fasteners to its customers [193 at 6], and that in April 2018, for example, it asked Safety Socket to certify a plated commercial part to military specifications. PSOAF ¶ 31. In addition, Relli's COO, Park, testified to the number of Safety Socket commercial fasteners Relli has sold, how many were sold without alteration, and what military part number they were represented as by Relli. PSOAF ¶ 14; *see also* Park Dep. (Dkt. 191-2), p. 63 (testifying that Relli received a commercial part and assigned it a military part number before shipping to the customer).

---

[6] The Court notes that Relli did not include the first sale doctrine as an affirmative defense in its answer. [174].

Although Relli maintains that its sale of unaltered products is not wrongful, in Safety Socket's view, Relli's holding out of the fasteners as complying with military specifications means that the fasteners sold to customers do not conform to Safety Socket's quality control standards. Indeed, "[o]ne of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." *Desmond v. Chicago Boxed Beef Distributors, Inc.*, 921 F. Supp. 2d 872, 881 (N.D. Ill. 2013) (quoting *El Greco Leather Prods. Co. v. Shoe World*, 806 F.2d 392, 395 (2d Cir. 1986)). So "the actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain." *Id.*

In assessing whether the first sale doctrine applies, courts have explained that goods are "materially different" when "they do not conform to the trademark holder's quality control standards." *Johnson & Johnson v. Advanced Inventory Mgmt.*, Inc., No. 20-CV-3471, 2020 WL 6119516, at *14 (N.D. Ill. Oct. 16, 2020). The test is "whether the quality control procedures established by the trademark owner are likely to result in differences between the products such that consumer confusion regarding the sponsorship of the products could injure the trademark owner's goodwill." *Maui Jim*, 459 F. Supp. 3d at 1088. In *PW Stoelting*, for example, the Court concluded that defendants were not entitled to summary judgment based on the first sale doctrine in part because defendants' websites "led to full-color [plaintiff]-produced specification sheets about the equipment," which could lead to consumer confusion. 2018 WL 6603874, at *9. Similarly here, Relli concedes that it sends Safety

14

Socket Certifications at least sometimes with its shipment of fasteners, PSOF ¶ 30, which could give rise to confusion about the source and quality of the fasteners.

Therefore, Relli has not met its burden on summary judgment to show that the first sale doctrine bars Safety Socket's claims.

### 2. *Consumer Confusion*

Next the Court turns to likelihood of confusion, which "is a question of fact, appropriate for summary-judgment resolution only if no reasonable factfinder could decide for [plaintiff]." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 425 (7th Cir. 2019). Seven factors guide this assessment: "(1) the similarity between the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care consumers are likely to use; (5) the strength of plaintiff's mark; (6) actual consumer confusion; and (7) the defendant's intent to 'palm off' its product as that of another." *Id.* (citation omitted). No single factor is dispositive but in general the most important are the similarity of the marks, the defendant's intent, and actual confusion. *Id.*

As an initial matter, the Court does not agree with Safety Socket that there is sufficient evidence to *presume* confusion. [188 at 11]. This would require a finding that the goods at issue are counterfeit. S*ee H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., Ltd.*, No. 16-CV-10096, 2017 WL 6733685, at *3 (N.D. Ill. Dec. 18, 2017). As discussed below the Court finds there are issues for trial on Safety Socket's counterfeit claim, but it is not making a finding that any goods were counterfeit.

15

Turning to the first and second confusion factors, Safety Socket argues that the marks and products are identical—Safety Socket's original fasteners and the fasteners resold by Relli, bearing Safety Socket's marks. [188 at 12]. As to the third factor, Safety Socket manufactures the exact parts Relli is altering and selling. *Id*. Relli does not respond to Safety Socket's arguments about these three factors [192], thus waiving any response for purposes of summary judgment.[7]

As to the fifth factor, the strength of Safety Socket's mark, Relli does not dispute that Safety Socket's fastener marks are listed for use by the U.S. Military in MILHDBK- 57 and in the Manufacturer Identification Symbols International Guide, and that Safety Socket is a certified QSLM and has been marketing its brand since 1931. PSOF ¶ 42. Safety Socket thus has been marketing its brand for more than ninety years. This element is satisfied.

For two of the other factors, customers' degree of care and Relli's intent to "palm off" its product, Safety Socket's arguments are undeveloped and unsupported by the record. [188 at 12-13]. Therefore the Court does not consider these factors in its analysis. *See Cooper*, 42 F.4th at 688; *Castelino*, 999 F.3d at 1040.

Finally, as to actual confusion, although Safety Socket does not provide direct statements from customers, it relies on testimony from Relli's COO Park stating that customers ask him who is the manufacturer of the parts and Park says it is "very [tough] to say who manufactured this item." PSOAF ¶ 25. Evidence from Park and a

---

[7] Relli relies on *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947) to argue that this Court need not assess the confusion factors at all. Yet the Supreme Court in that case *affirmed* a finding of trademark infringement and unfair competition. And it did not say anything about a court not needing to address the likelihood of confusion factors.

16

customer's third-party inspector is minimal and is not direct consumer testimony or statements. [188 at 13]. However, Relli's assertion that its customers never indicated that they knew Safety Socket or associate Safety Socket with the Head Marks relies only on Mr. Jacob's testimony, not customer statements. DSOF ¶ 40. In any event, "[p]roof of actual confusion among consumers is not required to prove likelihood of confusion." *Uncommon, LLC*, 305 F. Supp. 3d at 862 (cleaned up); *see also* W*eb Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1205 (7th Cir. 1990) (requiring proof of injury caused by actual confusion would be improper); *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 627 (7th Cir. 2022) (plaintiff's showing of a likelihood of confusion is "a question of fact in which 'actual confusion' is but a single nondispositive part."), cert. denied, 143 S. Ct. 577 (2023).

In addition, the Court finds Relli's arguments about the lack of confusion to be, well, confusing. Relli disputes that "it represented fasteners as Military-compliant parts; rather, the record is clear that Relli represented only that the parts complied with its customer's specifications." [208 at 8]. At the same time, Relli concedes that "it has purchased commercial fasteners, sent them to platers, and used them to fill orders for parts identified on purchase orders with military part numbers" (though it says that "this is a very small part of [its] business."). [193 at 11]. And Relli's insistence that it notifies customers that it is responsible for the fasteners [183 at 11] does not persuade the Court that there is no confusion particularly in light of the fact that the Lanham Act "protect[s] both consumer confidence in the quality and source of goods and businesses' goodwill in their products." *CAE, Inc.*, 267 F.3d at 672.

Safety Socket's evidence of likelihood of confusion is not robust and not enough to grant summary judgment in Safety Socket's favor. But it is enough to raise factual issues for a jury to resolve, particularly considering that this issue is usually a question of fact. *See Uncommon, LLC,* 926 F.3d 409; *First State Bank of Monticello*, 555 F.3d at 567 (on cross-motions for summary judgment the court construes all facts and inferences therefrom in favor of the party against whom the motion was made).

Accordingly, the Court finds there are genuine issues of material fact about whether Relli's use of the Head Marks was likely to cause confusion. Because factual disputes preclude judgment for either party on Safety Socket's claims of infringement of the Safety Socket Head Marks, the cross-motions for summary judgment on Counts I, II and IV are denied as to the Head Marks only.

## III.   Counterfeiting (Count III)

Safety Socket claims Relli is liable for counterfeiting with respect to the Head Marks, the two registered marks. *See* Am. Compl. ¶ 75; *see also* [183 at 14]. Safety Socket argues that Relli is liable for counterfeiting because of its unauthorized use of marks identical to Safety Socket's federally-registered marks, and are used in a manner likely to cause confusion, mistake or to deceive. Safety Socket's theory is that Relli's reprocessing of Safety Socket's product was unauthorized, and Relli's sale of the altered products constituted unlawful counterfeiting. *See* 5 McCarthy §§ 25:10 (5th ed. 2020) (explaining that "counterfeit merchandise is made so as to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise").

18

The Lanham Act prohibits the use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale . . . of any goods or services [where] such use is likely to cause confusion . . . or to deceive." 15 U.S.C. § 1114(1)(a). The statute defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. As this Court previously explained, counterfeiting is a "subset of trademark infringement." [167 at 3, collecting cases]. *See also* Restatement (Third) of Unfair Competition § 36 (1995) ("[t]he difference between counterfeiting and traditional trademark infringement...is one of degree, depending chiefly on intent and the similarity of the infringing mark to the genuine mark").

As Safety Socket points out, counterfeiting does not require that a defendant make a reproduction of plaintiff's trademark; as the Seventh Circuit explained in *Gen. Elec. Co. v. Speicher*: "[Defendant] used GE's registered trademark, stamped on boxes supplied to him by T & A, in connection with goods that were not GE goods. We can see no difference, so far as the objectives of section 1114(1)(a) are concerned, between doing this and making a reproduction of GE's trademark." 877 F.2d 531, 534 (7th Cir. 1989); s*ee also Chicago Mercantile Exch. Inc. v. ICE Clear US, Inc.*, No. 18 C 1376, 2020 WL 1905760, at *20 (N.D. Ill. Apr. 17, 2020) (noting that the Seventh Circuit has stated that the purpose of the Lanham Act's counterfeiting provision "is to prohibit the use of a trademark on an unauthorized product, not merely to prohibit literal counterfeiting through reproductions or imitations that deceive customers about the source of a product").

19

Relli argues that it did not use a "spurious mark" because it did not represent to customers "that the products were Safety Socket's after they had been processed", rather it "represented that it had altered products originally sourced from Safety Socket." [192 at 6]. As discussed, there are questions of fact about whether there was consumer confusion caused by Relli's use of Safety Socket's Head Marks. The Court will not find as a matter of law at this stage that Relli used a counterfeit mark in violation of the Lanham Act, but Safety Socket's evidence is sufficient to raise a jury question on the counterfeit claim.

Relli's summary judgment motion accordingly is denied as to Count III.

## IV. Unfair Competition and Deceptive Trade Practices Claims (Counts V and VI)

Claims for unfair competition and deceptive trade practices under Illinois law are analyzed according to the principles set forth in the Lanham Act. *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1012 (N.D. Ill. 2014). In light of the above analysis and for the same reasons, Counts V and VI survive summary judgment but only as to the Safety Socket Head Marks.

## CONCLUSION

For the stated reasons, Relli's summary judgment motion [182] is granted in part and denied in part and Safety Socket's summary judgment motion [187] is denied. Safety Socket's claims survive and remain pending for trial but only as to the Safety Socket Head Marks.

E N T E R :

Dated: May 15, 2023

_____
MARY M. ROWLAND
United States District Judge